UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NANCY K. NATHANSON, | Case No. 18-CV-3102 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| DIVERSIFIED ADJUSTMENT SERVICE, INC., a Minnesota corporation, | |
| Defendant. | |

Michael J. Sheridan, ATLAS LAW FIRM, for plaintiff.

Michael A. Klutho and Patrick D. Newman, BASSFORD REMELE, for defendant.

Plaintiff Nancy Nathanson filed this action on November 5, 2018, alleging that defendant Diversified Adjustment Service, Inc. ("Diversified") violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") when it attempted to collect a debt from her in violation of the automatic stay that had been entered in her Chapter 7 bankruptcy proceeding. A few months later, Nathanson accepted a Fed. R. Civ. P. 68 offer of judgment from Diversified. The offer provided that judgment would be entered in Nathanson's favor and against Diversified in the amount of $1,001, plus an additional amount of reasonable attorney's fees and costs. The parties agreed that, if they could not reach an agreement on the amount of attorney's fees and costs, the matter would be left to the Court.

The parties were unable to agree, so the matter is now before the Court on Nathanson's motion for attorney's fees and costs. Nathanson seeks a total of $5,262.50. Diversified opposes Nathanson's motion, arguing that "special circumstances" preclude *any* award of attorney's fees and costs. Alternatively, Diversified argues that even if an award is not altogether precluded, a reasonable amount of attorney's fees would be $714.99. For the reasons that follow, the Court grants Nathanson's motion and awards Nathanson a total of $4,960 in attorney's fees and costs.

I. SPECIAL CIRCUMSTANCES

Generally, a plaintiff who prevails on an FDCPA claim is entitled to recover reasonable attorney's fees and costs. 15 U.S.C. § 1692k(a)(3).[1] Some courts have held, however, that an exception applies when "special circumstances would render such an award unjust." *Peter v. Jax*, 187 F.3d 829, 837 (8th Cir. 1999) (citation omitted) (indicating that a special-circumstances exception exists under 42 U.S.C. § 1988—a different fee-shifting statute); *see also Davis v. Credit Bureau of the S.*, 908 F.3d 972, 976-77 (5th Cir. 2018) (stating that the special-circumstances exception applies under the FDCPA); *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995) (same); *Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir. 1991) (same). "Special circumstances" that render

---

[1] *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) ("The FDCPA's statutory language makes an award of fees mandatory." (citation omitted)); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (same).

an award unjust may be found when a plaintiff or her attorney acts in bad faith. *Davis*, 908 F.3d at 976-78; *Graziano*, 950 F.2d at 114 n.13.

Diversified alleges—or at least strongly implies—that Nathanson's attorney (Michael Sheridan) acted in bad faith by "manufacturing" this lawsuit, and thus that any award of attorney's fees or costs would be unjust. *See* ECF No. 30 at 1-2, 8-10. Diversified's allegations and argument can be summarized as follows:

Sheridan represented Nathanson in her Chapter 7 bankruptcy proceeding, which was initiated when Sheridan filed a petition and various schedules on her behalf. One of those schedules (Schedule E/F) required Sheridan to identify all of the unsecured creditors to whom Nathanson owed money. That same schedule also included a section that asked Sheridan to identify any collection agency that was attempting to collect a debt from Nathanson. Sheridan listed eight different collection agencies, but did not list Diversified. This omission must have been intentional, Diversified says, because Sheridan knew very well that Diversified was a collection agency that was attempting to collect a debt from Nathanson. In fact, prior to Sheridan's filing of the bankruptcy petition, Diversified had sent three collection letters to Nathanson.

What motivated Sheridan? According to Diversified, Sheridan was laying a trap. By omitting Diversified from the schedule, Sheridan was ensuring that Diversified would not receive notice that Nathanson had filed for bankruptcy—and thus would not

know that, because of the automatic stay, Diversified was required to cease its collection efforts. Sheridan then waited until Diversified sent another collection letter to Nathanson, and, when it did, Sheridan pounced—suing Diversified for continuing to send collection letters to Nathanson in violation of the automatic stay that Sheridan himself had concealed from Diversified. In this way, Sheridan manufactured an FDCPA claim against Diversified—part of what Diversified alleges is Sheridan's "pattern and practice" of "ambush[ing]" collection agencies in this manner. ECF No. 30 at 1-2.

At the outset, the Court notes that if Diversified's allegations were true—that is, if Sheridan intentionally excluded Diversified (and other collection agencies) from bankruptcy schedules in order to manufacture FDCPA claims against them—the Court would not only refuse to award attorney's fees and costs to Nathanson, but the Court would notify the Lawyers Professional Responsibility Board of Sheridan's conduct. But Diversified's allegations do not appear to be true. Indeed, the basis for those allegations appears to be quite flimsy.

The Court first notes that, as best as it can tell, the Bankruptcy Code does not actually require a debtor to identify every collection agency that is attempting to collect a debt from her.² And thus, although Sheridan should have identified every collection

---

² *See* 11 U.S.C. § 521(a)(1)(A) (requiring a debtor to file "a list of *creditors*"
(continued...)

agency that was attempting to collect a debt from Nathanson, he did not violate any law if he intentionally omitted a collection agency of which he was aware. (Whether he acted ethically is a separate question.)

The Court also notes that, even if Sheridan was trying to manufacture an FDCPA claim, Diversified could have protected itself from falling into his trap. First, Diversified could have required the creditors on whose behalf it collects debts to notify it of any bankruptcy notices. The creditor on whose behalf Diversified was working in this case (TRIA Orthopaedic Center ("TRIA")) was identified by Nathanson in her Schedule E/F and thus was notified of Nathanson's bankruptcy filing. TRIA could have notified Diversified of the filing—and Diversified, in its contract with TRIA, could have obligated TRIA to notify it of such filings (and to indemnify it for any damages caused by a breach of that obligation).

Second, Diversified itself could have checked whether Nathanson filed for bankruptcy before sending her a collection letter. This is, after all, public information, easily obtained through a computer search of public records. (It took the Court less than one minute to find Nathanson's bankruptcy case by searching for her name in the

---

²(...continued)
(emphasis added)); *see also* ECF No. 31-1 at 69 (letter from The Association of Credit and Collection Professionals stating that § 521(a)(1)(A) should be amended to require debtors to—in addition to filing a list of *creditors*—also file a list of *known third-party debt collectors*).

PACER database.³) Although Diversified attempts to characterize Sheridan's failure to list it on the Schedule E/F as setting a "trap[]" that inevitably caused it to violate the FDCPA, that simply is not the case. ECF No. 30 at 9.

More to the point, though, the Court does not believe that Diversified has established that Sheridan intentionally failed to identify it as a collection agency on the Schedule E/F in order to manufacture an FDCPA claim. Diversified makes bold allegations against Sheridan, but provides little support for those allegations. For example, while Diversified alleges that Sheridan has "a pattern and practice" of failing to list collection agencies on his clients' bankruptcy schedules in order to manufacture FDCPA claims, Diversified offers only (1) the fact that *Diversified* was left off of *Nathanson's* schedule and (2) a list of 32 cases in which Sheridan represented an individual in both a bankruptcy proceeding and an FDCPA action.

As to Sheridan's omission of Diversified from Nathanson's bankruptcy schedule: The Court notes that Sheridan listed eight collection agencies on Nathanson's Schedule E/F. ECF No. 31-1 at 24-25. If Sheridan really was engaged in a scheme to set

---

³Diversified contracts with a third-party vendor to run a "bankruptcy scrub"—i.e., a search of court records to determine if an individual has filed for bankruptcy—when it is first assigned an account for collection. *See* ECF No. 5 at 8; ECF No. 32 at ¶ 5. Diversified claims it ran such a "bankruptcy scrub" on Nathanson. *See* ECF No. 5 at 8; ECF No. 32 at ¶ 6. But Diversified does not run a new "bankruptcy scrub" before sending each new collection letter. ECF No. 32 at ¶¶ 6-7. Diversified claims that doing this would "not [be] reasonable," *id.* at ¶ 7, but does not explain why.

"traps" and "manufacture" FDCPA claims, one would think he would not have listed *any* collection agencies. After all, someone who sets nine traps is more likely to catch a mouse than someone who sets one.

As to Sheridan's alleged "pattern and practice" of failing to identify collection agencies: The fact that Sheridan has—over a period of a decade—represented a total of 26 clients in both bankruptcy proceedings and FDCPA cases provides little evidence that Sheridan has been using bankruptcy proceedings to manufacture FDCPA claims. After all, there is a great deal of overlap between the pool of those who file for bankruptcy and the pool of those who file FDCPA actions. The more debts a person accumulates, the more likely the person is to find herself in both pools.

A closer look at this evidence of Sheridan's alleged misconduct reveals that the evidence is even weaker than appears at first glance. First, Diversified's list of cases includes multiple cases in which Sheridan *did* list the collection agency that he later sued. Those cases undermine Diversified's allegations. Second, Diversified's list includes cases in which the collection agency that Sheridan later sued did not try to collect a debt from Sheridan's client *before* the client filed for bankruptcy. In such cases, there would have been no way—or reason—for Sheridan to list that collection agency on the Schedule E/F.[4]

---

[4]*See, e.g., Engelby v. I.C. Sys., Inc.*, 17-CV-0296 (PJS/FLN), ECF No. 25 at 2 (D.
(continued...)

With respect to most of the other cases cited by Diversified, the Court simply cannot determine what Sheridan knew or when Sheridan knew it. In these cases, Sheridan usually listed some collection agencies in the bankruptcy paperwork, but did not list the particular collection agency that he later sued for violating the FDCPA. But there is no way to tell whether the collection agency became involved in trying to collect a debt from Sheridan's client *before* the client filed for bankruptcy. There is also no way to tell whether Sheridan *knew* of any such pre-filing attempt to collect a debt by the collection agency.[5]

---

(...continued)
Minn. Aug. 18, 2017) (defendant stating that it was assigned plaintiff's debt in July 2016, while plaintiff filed for bankruptcy in April 2016); *Eide v. Colltech, Inc.*, 12-CV-0812 (JRT/JJG), ECF No. 10 at 3 (D. Minn. Apr. 25, 2013) (defendant stating that it was assigned plaintiff's debt four months after he filed for bankruptcy); *Peterson v. United Collection Bureau, Inc.*, 11-CV-1284 (ADM/JJK), ECF No. 13 at 2 (D. Minn. Oct. 14, 2011) (defendant stating that it was assigned plaintiff's debt on the same day that she filed her bankruptcy petition).

[5]*See, e.g.*, *In re Cohrs*, 18-BK-42268, ECF No. 1 at 33-34 (Bankr. D. Minn. filed July 13, 2018) (listing twelve collection entities, just not the one that was later sued); *In re Kasprzak*, 17-BK-40158, ECF No. 1 at 26-28 (Bankr. D. Minn. filed Jan. 20, 2017) (listing nineteen collection entities, just not the one that was later sued); *In re McRaven III*, 16-BK-43290, ECF No. 1 at 38-40 (Bankr. D. Minn. filed Nov. 7, 2016) (listing nineteen collection entities, but only one of the two that was later sued); *In re Carlson*, 16-BK-40816, ECF No. 1 at 27-29 (Bankr. D. Minn. filed Mar. 23, 2016) (listing eighteen collection entities, just not the one that was later sued).

Diversified has identified only a single case in which the Court can conclude that Sheridan *may* have failed to list a collection agency of which he was aware.[6] But even with respect to that case, Sheridan may simply have made a mistake. After all, Sheridan would hardly be the first attorney to accidentally leave something off of a Chapter 7 schedule.

In sum, the evidence submitted by Diversified falls well short of establishing that Sheridan has engaged in a "pattern and practice" of intentionally omitting collection agencies from bankruptcy schedules and then later suing those agencies for violating the FDCPA. Diversified has therefore failed to establish that "special circumstances" justify the denial of Nathanson's motion for an award of attorney's fees and costs. *See Hatfield v. Hayes*, 877 F.2d 717, 720 (8th Cir. 1989) (discussing how "the 'special circumstances' exception" to a fee-shifting statute was a "judicially created exception," and thus "should be narrowly construed" (citation omitted)); *see also De Jesús Nazario v. Morris Rodríguez*, 554 F.3d 196, 200 (1st Cir. 2009) (same, and also making clear that "'the burden is on the defendant'" to establish that the exception applies (citation omitted)).

---

[6]*See Robinson v. Creditor Advocates, Inc.*, No. 15-CV-1240 (SRN/LIB), ECF No. 1 at ¶¶ 9-10 (D. Minn. Mar. 12, 2015).

## II.  REASONABLE ATTORNEY'S FEES

Having found that Nathanson is entitled to recover attorney's fees and costs, the Court must decide what amounts are reasonable in this case.  The starting point for calculating a reasonable fee award is the lodestar—the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).  Diversified seems to concede that Sheridan's $275 hourly rate is reasonable, and the Court agrees.  In the past couple of years, judges in this District have approved similar hourly rates for successful plaintiffs' attorneys in FDCPA cases.  *See, e.g.*, *Bell v. Am. Accounts & Advisers, Inc.*, No. 18-CV-2474 (MJD/ECW), 2018 WL 6718573, at *3-4 (D. Minn. Nov. 15, 2018) ($275 an hour), *R&R adopted at* 2019 WL 1405606 (D. Minn. Mar. 28, 2019); *Price v. Midland Funding LLC*, No. 18-CV-0509 (SRN/SER), 2018 WL 5259291, at *4-5 (D. Minn. Oct. 22, 2018) ($400 an hour); *Meidal v. Messerli & Kramer, P.A.*, No. 18-CV-0985 (PAM/BRT), 2018 WL 4489693, at *2 (D. Minn. Sept. 19, 2018) ($300 an hour); *Goetze v. CRA Collections, Inc.*, No. 15-CV-3169 (MJD/FLN), 2017 WL 5891693, at *4 (D. Minn. Nov. 28, 2017) ($220 an hour); *Kuntz v. Messerli & Kramer P.A.*, No. 16-CV-2676 (JNE/BRT), 2017 WL 3332222, at *2-3 (D. Minn. Aug. 4, 2017) ($350 an hour); *Iverson v. Greystone All., LLC*, No. 14-CV-1027 (ADM/HB), 2015 WL 4635840, at *3 (D. Minn. Aug. 4, 2015) ($250 and $300 an hour).

Diversified takes issue with the manner in which Sheridan recorded his time and the amount of time that he devoted to particular tasks. Broadly speaking, Diversified's complaints pertain to Sheridan's use of block billing and his charging for administrative tasks and other tasks that Diversified regards as "unnecessary."

Before addressing Diversified's arguments, the Court emphasizes that it does not have the duty—or usually the ability—to closely scrutinize each entry on the time sheet of an attorney who is seeking an award of fees. As the Supreme Court has explained, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). In this case, however, Sheridan has submitted only 12 entries that document only 17.5 hours of work. ECF No. 24 at 3-5. The Court has therefore examined each of the entries to which Diversified objected.

The Court begins by noting that, as a general matter, it has no problem with block billing—and, more importantly, neither does the Eighth Circuit. *See, e.g., Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015) (holding that the district court did not abuse its discretion when it declined to reduce an attorney's fees award due to time entries being block billed). As far as this Court is concerned, "block-billing is problematic only where the hours billed for multiple tasks appear[] excessive, or where billed time needs to be

eliminated for certain tasks . . . ." *Washington v. Denney*, Civ. No. 2:14-cv-06118-NKL, 2017 WL 4399566, at *6 (W.D. Mo. Oct. 3, 2017) (citation omitted). Here, Sheridan's block billing is problematic for the latter reason: Some of his block entries include both "lawyer" tasks for which he should be paid and "administrative" tasks for which he should not be paid, and the fact that he has block billed makes it difficult for the Court to separate the two. *See Taylor v. City of Amboy*, No. 14-CV-0722 (PJS/TNL), 2017 WL 4075163, at *5 (D. Minn. Sept. 14, 2017) ("Ordinarily, clerical tasks 'cannot fairly be accounted for at an attorney's, or even a paralegal's, billing rate.'" (citation omitted)).

The Court is not concerned about most of the block entries that mention administrative tasks, as it is likely that the administrative tasks took no more than a couple of minutes. But there are two entries that the Court will adjust downward because they include administrative tasks:

First, Sheridan's second time entry bills 1.6 hours for:

> Final review of Fair Debt Collection Practices Act complaint and exhibits; *draft civil cover sheet; prepare complaint and exhibits for filing; file the same;* confer with client re: next steps and potential for settlement.

ECF No. 24 at 3 (emphasis added). Given the multiple administrative tasks in this entry, the Court finds that a 50% reduction is warranted.

Second, in Sheridan's third time entry, he bills .3 hours for strictly administrative tasks (specifically, preparing the summons, complaint, and exhibits for service of

process, searching for the proper address to serve, and conferring with the process server). *See id.* The Court will thus reduce Sheridan's time by .3 hours.

In total, then, the Court finds that 1.1 hours should be deducted from Sheridan's time sheet for administrative tasks. Although Diversified also complains about some other hours expended by Sheridan that it believes were excessive or unnecessary—specifically, the amount of time he spent drafting the complaint, and his drafting of an eight-page letter to Diversified's attorneys—the Court finds these hours and tasks to be reasonable. As to the drafting of the complaint, Sheridan spent a total of 3.6 hours reviewing his client's file, drafting the five-page complaint, putting together the complaint's two corresponding exhibits, conferring with his client about the case and the potential for settlement, and giving the complaint and exhibits a final review. *See* ECF No. 24 at 3. The Court does not find this unreasonable. As to the eight-page letter Sheridan wrote to Diversified's attorneys, Diversified complains that "[t]here was *no good reason*" to draft this letter. ECF No. 30 at 14. The Court disagrees. Sheridan was attempting to promote settlement by refuting various arguments that had been made by Diversified. This was a reasonable use of Sheridan's time.

In sum, the Court finds that 16.4 hours were reasonably expended on this litigation and that $275 is a reasonable hourly rate for Sheridan. Nathanson is entitled to $4,510 in attorney's fees and $450 in costs.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Nathanson's motion for attorney's fees [ECF No. 15] is GRANTED IN PART AND DENIED IN PART.

2. Nathanson is awarded $4,510 in attorney's fees and $450 in costs, for a total of $4,960.

Dated:  September 13, 2019          s/Patrick J. Schiltz
                                    Patrick J. Schiltz
                                    United States District Judge